[Crim. No. 1097. First Appellate District, Division One.—April 17, 1923.]

THE PEOPLE, Respondent, v. GIUSEPPE MOROTTI, Appellant.

[1] CRIMINAL LAW—CONTRIBUTING TO DELINQUENCY OF MINOR—SUFFI-CIENCY OF EVIDENCE.—In this prosecution for contributing to the delinquency of a female child of the age of nine years by acts tending to cause her to lead an idle, dissolute, and immoral life, the evidence is sufficient to justify the verdict although attended with certain inherent improbabilities which might be held to affect its weight.

[2] ID.—EVIDENCE—IMPEACHMENT OF MINOR—WRITTEN STATEMENT—REVERSIBLE ERROR.—The admission in evidence in such prosecution of a writing signed by the child's aunt and the county probation officer stating what the child had told them defendant had done to her, which was offered in contradiction and impeachment of the testimony of the child, who had surprised the prosecution by her denials of the commission by defendant of the acts charged, was prejudicial in the highest degree, where the testimony of the probation officer conclusively showed that the child made no such statement to him or in his hearing, and the aunt denied that the statements attributed to the child had been made to her by the child in anything like the detail in which they appeared in the writing or that the child had made or understood that she was making any such specific admissions as the writing contained.

APPEAL from a judgment of the Superior Court of Marin County. Edward I. Butler, Judge. Reversed.

The facts are stated in the opinion of the court.

61 Cal. App.—44

E. B. Martinelli and Jordan L. Martinelli for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

RICHARDS, J.—The defendant was charged with and convicted of the offense of contributing to the delinquency of a minor, the charging part of the information consisting in the averment that the said defendant did, on or about the twentieth day of January, 1922, at and in the county of Marin, state of California, willfully, unlawfully, and lewdly commit certain specified lascivious acts of fondling and personal contact upon the person of one Florinda Berri, a female child of the age of nine years, which would tend to cause said child to lead an idle, dissolute, and immoral life. This appeal is from the judgment of conviction of this offense.

[1] The first contention of the appellant is that the evidence was insufficient to justify the verdict or support the judgment. We find no merit in this contention. The prosecution produced the witness Agostini, who testified directly to the commission of the acts complained of by the defendant within the presence and observation of the said witness. It is true that the testimony of this witness is attended with certain inherent improbabilities which might be held to affect its weight, but which are not, in our opinion, sufficient to so far destroy its value as to render it insufficient to sustain the verdict of the jurymen if believed by them. The argument of the appellant as to the insufficiency or doubtful character of this testimony is more particularly directed to the appellant's second contention, which is that the trial court committed prejudicial error in the admission of certain other evidence offered by the prosecution in support of its case. The occasion for the offer of this evidence arose in this wise: The prosecution placed upon the witness-stand the minor child, a girl of the age of nine years, upon whose person the lascivious acts charged against the defendant were alleged to have been committed. The child, when examined in chief as such witness, denied that the defendant had committed any of said acts upon her person and denied that she had ever been at the place with the defendant where the acts were alleged and testified to by the witness

Agostini to have been committed. The prosecution, being surprised by her denials, undertook to cross-examine the witness and also undertook to lay the foundation for impeaching her testimony by questions having for their purpose the showing that she had made statements to certain other persons which were in contradiction of her testimony as given upon her examination in chief. The child was asked whether she had not had conversations with her aunt, Mrs. Bolla, and with a Mr. O'Connor, at the home of her said aunt in Gonzales, with relation to the conduct of the defendant toward her in her father's barn in Marin County a few weeks before. She admitted that she had had conversations with these two persons at the place indicated, and also admitted that in response to certain very general questions asked by them she had responded at first with denials, but had finally answered affirmatively to some of these questions, but she insisted that in so doing she was excited and hysterical and so pressed that she did not understand what she was saying and that her affirmative responses given under these circumstances were untrue. After this vain attempt to procure from the child testimony which would sustain the charge against the defendant, the prosecution placed upon the witness-stand Mr. O'Connor, who testified that he was the probation officer of the county of Marin, wherein the offense was charged to have been committed; that having learned of the statements which the witness Agostini had made, he sought to interview the child at the home of her parents in that county, but found that she had been sent to the home of her aunt, Mrs. Bolla, at Gonzales, in Monterey County. He accordingly went to Gonzales, and learning from the child's aunt that she was in school, drove over to the school and got the child. On the way back to the house of the aunt he undertook to interview the child as to the conduct of the defendant toward her, asking her some very general questions touching the acts of the latter, to which the child replied with denials or made no reply, but became nervous and hysterical. Upon reaching the house of the aunt he undertook to further question the child in her presence, but with no result except to render the child hysterical. He then suggested that the aunt should take the child into a room apart and question her at length and in detail as to the acts and conduct of the defendant toward

her. The aunt and the child went into another room, away from the presence of the witness. In a few moments the aunt returned, saying: "The girl admits everything." The witness O'Connor then went into the room, where the child was lying on the bed, and testified that he said to the child: "Is this true that you told your aunt," and the child said, "Yes." He then said: "Is it a fact that Morotti did those things to you in the barn; she said, 'Yes.' Did he do it very often; she said, 'He was after me all the time.'" He then testified he went out of the presence of the child and into the adjoining room, where the aunt was, and there put in writing the following statement, which, when written, was signed by the child's aunt and by himself. It reads as follows:

"On April 5th at the home of Mrs. Elvezia Bolla, Gonzales, Florinda Berri stated that Joe Morotti, an employee on her father's ranch at Point Reyes, took her into the barn on many occasions and fooled with her private parts, and at one time in January, 1922, took off her pants, exposed his private parts, and placed his private parts between her legs; that she wants to stay with her aunt at Gonzales, being afraid to return to her father's home at Point Reyes because Morotti bothered her every time she went in the barn. Agostini saw them twice in the barn in January.

"This statement was made to the probation officer of Marin county in the presence of her aunt Mrs. Bolla.

"(Signed) Mrs. Elvezia Bolla.
"Thos. O'Connor."

Prior to offering the foregoing evidence of O'Connor and before offering in evidence the above-quoted document the prosecution had placed upon the witness-stand Mrs. Elvezia Bolla, the child's aunt, and who had proved almost as reluctant and recalcitrant a witness as had the child herself. Mrs. Bolla admitted that she had signed the writing above quoted, but she denied that the statements attributed therein to the child had been made to her by the child in anything like the detail in which they appeared in said writing or that the child had made or understood that she was making any such specific admissions as the writing contained. She asserted that she did not read over the writing before signing it and did not understand its contents and that in the main its specific statements as to what the child had said then

were untrue. The prosecution, having examined these two witnesses in the manner and with the result above indicated, offered in evidence the foregoing written statement. It was objected to upon the ground that it was incompetent, irrelevant, immaterial, and hearsay and that no proper foundation for its introduction had been laid. These objections were overruled by the trial court and the writing was admitted in evidence and read to the jury. The conviction of the defendant followed, and that his conviction was in a large measure due to the testimony of the witness O'Connor and to the specific statements contained in this writing we entertain little, if any, doubt. If the ruling of the trial court in admitting in evidence this writing was erroneous, the error was prejudicial in a high degree. [2] That this ruling of the trial court was erroneous seems to us to be manifest. Its admission was first sought to be justified upon the ground that it embodied a complaint which the alleged victim of the defendant's lascivious acts and conduct had made soon after the commission of said acts, but the difficulty with the respondent's contention in the case is that the undisputed evidence shows that the child made no such complaint; that whatever statement she made was not voluntary, and that whatever admission she may have made was forced by persistent questioning from her reluctant lips and was attended with almost immediate denials. As to the rule that a complaint on the part of the victim of the lust of another, when made voluntarily and soon after the commission of the outrage upon her feelings or person, is admissible in evidence in cases of this character there can be no doubt. The admission of this writing cannot, however, be justified upon that ground, nor does the prosecution as the respondent herein seriously attempt to do. The real and only defensible ground upon which the respondent stands in seeking to justify the admission in evidence of this document is that it was offered in contradiction and impeachment of the testimony of the child, who had surprised the prosecution by its denials of the commission by the defendant of the acts complained of. As to this ground it is to be noted that the record discloses that the writing was offered and admitted solely upon the ground that it impeached the testimony of the child. As such impeaching evidence there are two insuperable objections to its admis-

sion. The first is that in so far as it purported to be the statement of the witness O'Connor as to what the child had said to him, his own evidence shows conclusively that the child made no such statement to him or in his hearing; and the second is that in so far as the witness O'Connor undertook to state in said writing what the child had said to her aunt out of his presence it was doubly hearsay and hence inadmissible upon that ground. (*People* v. *Lambert*, 120 Cal. 170 [52 Pac. 307].) But it would also be inadmissible upon the further ground that there is not the slightest scintilla of evidence that the child ever made to her said aunt the statements which said writing details. The utmost that the record discloses is that in response to some very general questions which the aunt put to the child when alone with her the child responded chiefly with denials, with here and there a reluctant affirmation or admission which was almost immediately withdrawn. This writing, therefore, in so far as it purported to embody what the witness O'Connor himself heard the child say or admit, was itself contradictory of his own sworn testimony upon the subject and hence inadmissible either as embracing contradictory admissions of the child or as a memorandum made by him at the time and used to refresh his memory while a witness upon the stand.

The claim of the respondent that this writing was admissible as evidence in contradiction of the testimony of Mrs. Bolla has a threefold answer, the first of which is that the writing was not offered or admitted for that purpose; the second is that Mrs. Bolla, when on the witness-stand, admitted that she had signed the writing but denied that she knew its contents when she did so, and as to this there is no evidence in the record that the writing was ever read over to or by her; and the third reason is that the writing does not purport to contain any statement which the child ever made to her aunt while out of the presence of O'Connor, but only purports to embody statements made by the child to the probation officer O'Connor in the presence of the aunt; while the undisputed evidence shows that no such statement was ever made. This removes every ground upon which the admission in evidence of this writing is attempted to be justified. It was clearly inadmissible and it is clearly prejudicial in the highest degree under the peculiar circumstances of this particular case. To a case of this character

and to an erroneous ruling of this prejudicial nature the provisions of section 4½ of article VI of the state constitution can have no possible application.

The judgment is reversed.

Tyler, P. J., and St. Sure, J., concurred.