[No. 25185. Department Two. January 18, 1935.]

ROBERT SAMARZICH, *as Guardian ad Litem of Chatco Samarzich, Appellant,* v. AETNA LIFE INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 40 P. (2d) 129.

380

*Herman E. Brown* and *Edward Starin,* for appellant.
*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

STEINERT, J.—Plaintiff brought this action to recover the compensation prescribed by the terms of an accident insurance policy. Trial was had before a jury. At the conclusion of plaintiff's case, defendant challenged the legal sufficiency of the evidence, and moved the court for a judgment in its favor, as a matter of law. The court sustained the challenge, and rendered judgment for defendant. The plaintiff has appealed.

We will state briefly the facts upon which the litigation rests: E. A. Webster & Co., a copartnership, was engaged in construction work connected with the Kittitas High-Line reclamation project near Easton, under a contract with the United States government. Chatco Samarzich was employed by the contracting company as a laborer on the project. His work was of a nature which, under the state workmen's compensation act, would be classified as extrahazardous. On July 26, 1928, Samarzich, while in the course of his employment, received severe injuries, as a result of which he was permanently and totally disabled, and ultimately became insane. Suit was brought on his behalf by his guardian *ad litem* against his employer to recover for his injuries, and a judgment for sixty-five hundred dollars was obtained. That judgment, however, has never been paid, and is apparently uncollectible.

Prior to the accident, E. A. Webster & Co. had, on September 30, 1927, procured from respondent insurance company a "Contractors Employers Liability Policy," by the terms of which the respondent agreed to indemnify the assured against loss or expense arising or resulting from claims upon the latter for damages on account of bodily injuries or death accidentally suffered by any employee of the assured in the work upon the project. The premium to be paid was based on the entire compensation earned by all persons engaged in the business of the assured, except such as were specifically excluded by the terms of the policy. Attached to the policy, and by recitals made parts thereof, were a number of typewritten, or else printed, riders, each of which was designated as an "endorsement." One of the typewritten riders is headed "ENDORSEMENT. Voluntary Compensation Coverage State of Washington." By the terms of this endorsement, the insurance company agreed to pay compensation and medical, surgical and hospital benefits *in amounts as provided and limited by the workmen's compensation act* on account of personal injury or death sustained by any employee of the assured, as "defined in said policy." We will hereinafter refer to this endorsement as "the typewritten endorsement."

A printed endorsement attached to the policy specifically provided that the policy covered claims for damages on account of accidents to employees engaged in works or occupations *not* embraced within the term "extra-hazardous," as defined by the statute or used in the workmen's compensation act, but that the policy did *not* cover claims arising on account of accidents to employees engaged in occupations which were embraced *within* the term "extra-hazardous" and were eligible for compensation from the state accident fund.

We will hereinafter refer to this endorsement as "the printed endorsement."

On the day of the accident, the contractor was employing from two hundred and fifty to three hundred men upon the project. Of these, about seventy per cent were engaged in extrahazardous work and thirty per cent in work that was not extrahazardous within the statutory definition.

According to the affirmative allegations of appellant's reply and his offer of proof in support thereof, it seems that, prior to taking out the policy of insurance, E. A. Webster & Co. had made some effort to bring itself within the coverage and protection of the workmen's compensation act, but that the department of labor and industries, acting on the advice of the *Attorney General,* had promulgated, and was following, a ruling that employees engaged in work upon Federal projects were not within the state workmen's compensation act. It was further alleged in the reply that the policy was written in the light, and upon the basis, of the department's ruling; and that the ruling was still in effect on the day of the accident.

Upon the trial, respondent made an attack upon the affirmative matter of the reply, by motion to strike and demurrer. The court granted the motion and sustained the demurrer, and subsequently overruled appellant's offers of proof in support of his pleading.

The assignments of error raise but one question, that is, whether appellant should have been permitted to plead and prove the allegations of his reply.

It is appellant's contention that the ruling made, and the policy adopted, by the department of labor and industries constituted the factual basis upon which the insurance was written, and that the purpose and intent of the insurance policy was to afford the workmen employed by the assured the same protec-

tion that they would have had under the workmen's compensation act. This may be conceded, in so far as, and if it be assumed that, the injured workman was not within the operation of the workmen's compensation act. However, it has been definitely settled by this court that construction work performed under a contract with the Federal government comes within the scope and purview of the workmen's compensation act. *Nickell v. Department of Labor & Industries,* 164 Wash. 589, 3 P. (2d) 1005; *State ex rel. Grays Harbor Constr. Co. v. Department of Labor & Industries,* 167 Wash. 507, 10 P. (2d) 213; *Long v. Thompson,* 177 Wash. 296, 31 P. (2d) 908. Nor is the employee's right to compensation under the act dependent upon the employer's contribution to the fund. This is made certain by the act itself. Rem. Rev. Stat., §§ 7673, 7676 [P. C. §§ 3468, 3471]. Nor is the remedy of the workman affected by rulings of the department in matters concerning questions of law. *Zappala v. Industrial Insurance Commission,* 82 Wash. 314, 144 Pac. 54, L. R. A. 1916A, 295; *Long v. Thompson,* 177 Wash. 296, 31 P. (2d) 908. In this instance, however, upon the facts disclosed by the record, the workman *did* come within the industrial insurance act, and was eligible for compensation thereunder.

The policy of insurance specifically prescribed, in the printed endorsement, both by affirmation and by negation, the extent of its coverage. It provided that claims for accidents to employees engaged in work *not embraced within* the term "extra-hazardous," as defined in the statute, were covered by the policy, but that claims on account of accidents to persons engaged in extrahazardous occupations and eligible for compensation from the state accident fund *were not covered* by the policy. Language could hardly be plainer or more positive. What may have been the

ruling of the department with respect to the applicability of the statute, or what the parties to the contract of insurance may have thought of the validity or effect of that ruling, is immaterial, in the light of the express language of the policy itself. The insurance company agreed to indemnify the assured, or to compensate the injured workman, only for claims that were *without* the scope of the workmen's compensation act.

Appellant urges that the excluded proof was admissible on the theory that the policy of insurance, taken in connection with the endorsements, was ambiguous in its terms, and that the printed endorsement was inconsistent with the typewritten endorsement.

If a provision in a contract of insurance is susceptible of two constructions, that construction will be adopted which is more favorable to the insured; but when the language of the contract is plain and unambiguous, its effect can not be destroyed by construction. 2 Cooley's Briefs on Insurance, p. 1000. The rule as thus stated by that author is sustained by a long line of decisions, among them being one of our own cases, *Green v. National Casualty Co.*, 87 Wash. 237, 151 Pac. 509, in which it is said, on p. 244 of the state report:

"In thus construing the policy, we are not unmindful of the rule that policies of insurance are construed in favor of the insured and most strongly against the insurance companies. *Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 82 Pac. 113, 4 L. R. A. (N. S.) 636. But this rule should not be permitted to have the effect to make a plain agreement ambiguous and then interpret it in favor of the insured. Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their

plain and ordinary meaning. *Imperial Fire Ins. Co. v. Coos County,* 151 U. S. 452; *Standard Life & Acc. Ins. Co. v. McNulty, supra,* [157 Fed. 224]."

While parol evidence is admissible to explain an apparent inconsistency in a policy of insurance, it is never admissible, in the absence of fraud or error arising from mutual mistake of fact, to show an intention contrary to that expressed in the instrument, or to substantially vary or extend the terms of a contract of insurance. 5 Joyce on Insurance (2d Ed.), §§ 3806, 3809; 8 Couch, Cyc. of Insurance Law, § 2182.

In the present case, there is no allegation or contention that the printed endorsement was added to the policy through fraud or mistake.

As we view the policy, there is no ambiguity in its terms warranting the admission of parol evidence. The policy is emphatic to the point that it does not cover such claims as are within the workmen's compensation act. Nor is there any inconsistency between the typewritten and printed endorsements. The typewritten endorsement merely provides for an alternative compensation to the employee *in the amount* provided by the workmen's compensation act, and *in the event* that the workman is willing to accept the same. Then, by an added and specific clause in the typewritten endorsement, it is provided that "nothing herein contained shall be construed to waive, alter or extend any of the provisions of said policy except as herein provided." The policy clearly reveals its intent that it shall not apply in its operation to claims *within* the workmen's compensation act.

Viewing the transaction of the parties to the contract of insurance transitively from purpose to result, we have simply this: The contractor was advised that the operation in which it was engaged was not within

the workmen's compensation act. Instead of taking the steps necessary to compel proper action by the department of labor and industries, as was suggested in *Long v. Thompson, supra,* it applied for a policy of liability insurance from respondent. The policy was issued with the stipulation that it did not cover claims falling within the workmen's compensation act. The insurance company took the risk of having the ruling of the department with reference to work upon Federal projects sustained by this court, and, had it been, respondent's complete liability would have been established. It therefore, no doubt, charged a premium commensurate with the risk. On the other hand, the assured took the chance that the ruling of the department might not be sustained by this court, which would result in its having paid a greater premium than it otherwise would have. Under the first contingency, the assured would be the gainer and the insurer the loser; in the latter event, the insurer would be the gainer and the assured the loser, *pro tanto.* These contingencies were but incidents of the contract of insurance. But the policy itself was full and complete, definite and positive. Having made specific provision for a contingency that has since been relieved of its uncertainty, its provisions attach and apply to the condition as it actually exists. Appellant's claim does not fall within its terms and is not entitled to its protection.

The judgment is affirmed.

BEALS, HOLCOMB, and BLAKE, JJ., concur.